UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

LEONARD HAFFORD

CRIMINAL ACTION

NO. 11-14-BAJ-CN

**RULING ON MOTION TO SUPPRESS**

**I.  BACKGROUND**

Before the Court is a Motion to Suppress (doc. 17) filed by Leonard Hafford, defendant in the above-captioned matter. A two-count indictment was filed against Hafford on February 10, 2011, charging him with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count 1), and possession of a controlled substance (marijuana) in violation of 21 U.S.C. 844(a) (Count 2). (doc 1)

On April 16, 2010 at approximately 11:14 p.m., Hafford was driving a 1976 Oldsmobile Cutlass southbound on Maple Drive in Baton Rouge, Louisiana when Officer Derek Burns ("Officer Burns") of the Baton Rouge Police Department initiated a traffic stop of Hafford's vehicle due to loud music coming from the vehicle. After Officer Burns activated the emergency lights on his patrol vehicle, Hafford shortly pulled over into the driveway of his residence located at 3657 Evangeline Street. Officer Burns ordered Hafford to exit his vehicle, step to the rear

of the vehicle, and get on his knees. Officer Burns then placed Hafford in handcuffs. Officer Burns' subsequent discovery of marijuana and a pistol in Hafford's vehicle led to Hafford's arrest for the offenses with which he is currently charged.

Hafford filed the instant motion to suppress asking the Court to suppress "any and all evidence seized as a result of the unlawful search" of the defendant's vehicle. The United States filed an opposition (doc. 19) to the defendant's motion. The Court conducted an evidentiary hearing on the motion to suppress on May 11, 2011, during which the Court heard testimony from Officer Burns, as well as oral argument from both parties. The United States also presented a video recording of Officer Burns' stop and subsequent arrest of Hafford.

## II. LAW AND ANALYSIS

### A. Validity of the stop of the defendant's vehicle

Hafford's motion to suppress presents two primary issues arising under the Fourth Amendment; first, whether the initial stop of Hafford's vehicle was constitutionally valid, and second, whether the subsequent search and seizure of items from Hafford's vehicle resulted in a violation of Hafford's constitutional rights.

As to the first issue presented, whether the stop was constitutionally valid, the Fifth Circuit has found that "a police officer's brief investigatory stop of a vehicle and its driver does not violate the Fourth Amendment provided it is based on the reasonable suspicion that the person is engaged or is about to be engaged in

2

criminal activity." *U.S. v. Breeland*, 53 F.3d 100, 102 (5th Cir. 1995), quoting *United States v. Tellez*, 11 F.3d 530, 532 (5th Cir.1993). The Fifth Circuit has further held that "[t]he detention must be temporary and must last no longer than is necessary to effectuate the purpose of the stop. However, if additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled, then the detention may continue until the new reasonable suspicion has been dispelled or confirmed." *U.S. v. Banuelos-Romero*, 597 F.3d 763, 767 (5th Cir. 2010), citing *U.S. v. Lopez-Moreno*, 420 F.3d 420 (5th Cir. 2005).

Officer Burns testified at the hearing on the motion to suppress that he initially stopped Hafford because of loud music coming from the defendant's vehicle in violation of a Baton Rouge municipal ordinance.[1] The defendant does not argue that there was not loud music coming from his vehicle, nor does he argue that his playing loud music in his vehicle was not a violation of the municipal ordinance. Officer Burns' personal detection of loud music coming from Hafford's vehicle would be sufficient for the officer to form a reasonable suspicion that the municipal ordinance was being violated. Accordingly, the Court finds that Officer Burns' stop of Hafford's vehicle does not present a violation of Hafford's fourth amendment rights.

---

[1] Baton Rouge City Ordinance 12:101(3) prohibits "[t]he playing of any radio, phonograph, tape, compact disc, musical instrument or any other machine or device capable of producing or reproducing sound, from a vehicle in such a manner, or with such volume, as to disturb the peace, quiet, comfort, or repose of persons in any dwelling, apartment, hotel, or other type of residence; of persons in any other vehicle; or of persons in any public place."

## B. Validity of the search and seizure of the firearm and marijuana

The second issue presented, whether the search of Hafford's vehicle and the seizure of the marijuana and firearm from the vehicle were conducted in violation of the Fourth Amendment, is more highly disputed by the parties than the validity of Officer Burns' initial stop of Hafford's vehicle. At the suppression hearing, Officer Burns testified that he ordered Hafford to exit the vehicle and that he placed Hafford in handcuffs because he believed that Hafford was "about to run" upon exiting the vehicle. Officer Burns testified that this belief arose from the fact that Hafford did not immediately stop on the roadway when signaled by the officer, but instead drove approximately 100 yards further and pulled his vehicle into the driveway of his residence. Officer Burns further testified that after he put Hafford into handcuffs and placed him in the police unit, he approached Hafford's vehicle to check for additional occupants. Officer Burns stated that at that time, the driver's door of Hafford's vehicle was open, the vehicle's engine was running and the headlights were on. Officer Burns testified that while standing outside the car, he looked into the passenger compartment of the vehicle using a flashlight and saw what appeared to be marijuana contained in a bowl on a center arm rest in the vehicle. The officer further testified that as he went into the vehicle to retrieve the marijuana, he could see a pistol protruding from underneath the driver's seat.[2] After Hafford

---

[2] A computerized search of the pistol's serial number indicated that the weapon was reported stolen in 2008.

was taken into custody, a computerized criminal history search performed at the police precinct revealed that Hafford had been convicted of a felony within the preceding 10 years.

The Government argued at the suppression hearing that Officer Burns observed the marijuana in plain view from the exterior of Hafford's vehicle, and that while lawfully entering the vehicle to retrieve the marijuana, Officer Burns also observed in plain view a portion of a firearm protruding from underneath the driver's seat. Counsel for the defendant argued that the firearm was not within Officer Burns' plain view, and that Officer Burns discovered the gun only after conducting an unlawful search. Referring to the video recording of the stop, which depicts Officer Burns entering the vehicle, defense counsel argued that there are portions of the recording which show Officer Burns disappearing from sight while leaning down inside of the vehicle. The defense argues that this is evidence that Officer Burns conducted an additional search to discover the firearm, discrediting the officer's testimony that the firearm was in plain view. When questioned by defense counsel concerning this segment of the video recording, Officer Burns testified that he was attempting to secure the firearm and was ensuring that there was nothing obstructing the pistol which may have caused it to fire when removed from underneath the seat of the vehicle.

The Court finds the testimony presented by Officer Burns at the hearing to be credible. Moreover, the Court finds that the Government has met its burden of

proof with respect to the search of the defendant's vehicle and the seizure of marijuana and the firearm found therein. The Government bears the burden of proving the constitutionality of police action where a stop and search are conducted without a warrant. See, *U.S. v. Raney*, 633 F.3d 385, 392 (5th Cir. 2011). The plain view exception allows police to seize items without a warrant where (1) the police lawfully entered the area where the item was located; (2) the item was in plain view; (3) the incriminating nature of the item was "immediately apparent"; and (4) the police had a lawful right of access to the item. *U.S. v. Roberts*, 612 F.3d 306, 312 (5th Cir. 2010). Moreover, the Fifth Circuit has long held that the plain view doctrine applies to articles which can be seen through the door or window of an automobile. *U.S. v. McDaniel*, 550 F.2d 214, 218 (5th Cir. 1977).

In the present case, Officer Burns first observed the marijuana while standing outside of Hafford's vehicle and looking into it using a flashlight.[3] As the Court has determined that the initial stop of Hafford's vehicle was valid, Officer Burns was therefore lawfully in a position from which he could look into the interior of Hafford's vehicle. Officer Burns testified that upon looking into the vehicle, he observed in plain view a substance contained in a bowl in the vehicle. The incriminating nature of the substance was immediately apparent, as Officer Burns recognized the

---

[3] Concerning the officer's use of a flashlight to illuminate the interior of the vehicle, the Fifth Circuit has stated that "[t]he fact that contents of the vehicle may not have been visible without the use of a searchlight does not preclude such observation from application of the plain-view doctrine." *U.S. v. Lara*, 517 F.2d 209, 211 (5th Cir. 1975).

substance as marijuana. As the United States Supreme Court has explained, "[t]he plain view doctrine generally is invoked in conjunction with other Fourth Amendment principles, such as those relating to warrants, probable cause and search incident to arrest." *Texas v. Brown*, 460 U.S. 730, 734, 103 S.Ct. 1535, 1539 (1993). Federal courts have consistently recognized that "[w]arrantless searches of vehicles are permitted when probable cause exists to believe that the vehicle contains contraband," *U.S. v. Howard*, 999 F.2d 195, 201, a Fourth Amendment principle commonly referred to as the "automobile exception."[4] Officer Burns' recognition of a contraband substance inside of the vehicle provided sufficient probable cause for the officer to enter the vehicle without a warrant. Officer Burns therefore had lawful access to seize the marijuana on the basis of plain view and automobile exceptions.

Officer Burns' observation and seizure of the firearm is also within the parameters of the plain view exception. After Officer Burns lawfully entered Hafford's vehicle to retrieve the marijuana, he observed the firearm in plain view protruding from underneath the driver's seat. Officer Burns testified that the incriminating nature of the firearm was immediately apparent, as it coincided with the possession of the marijuana, a controlled substance, presenting a violation of

---

[4]See, *Colorado v. Bannister*, 449 U.S. 1, 101 S.Ct. 42, 66 L.Ed.2d. 1 (1980) ("[I]t is axiomatic that searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment, subject to only a few specifically established and well delineated exceptions. One of these exceptions, recognized at least since *Carroll v. U.S.*, exists when an automobile or other vehicle is stopped and the police have probable cause to believe it contains evidence of a crime").

Louisiana state law.[5] Officer Burns had a lawful right of access to the firearm, as he had lawfully entered the vehicle to retrieve the marijuana. Therefore, the Court finds that the seizure of the firearm from Hafford's vehicle does not present a Fourth Amendment violation.

III. ORDER

Accordingly, for the reasons stated herein, the Motion to Suppress (doc. 17), filed by defendant Leonard Hafford is hereby **DENIED**.

Baton Rouge, Louisiana, June 7, 2011.

BRIAN A. JACKSON
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA

---

[5]La. R.S. 14:95E provides in pertinent part: "If the offender uses, possesses, or has under his immediate control any firearm, or other instrumentality customarily used or intended for probable use as a dangerous weapon, while committing or attempting to commit a crime of violence or while in the possession of or during the sale or distribution of a controlled dangerous substance, the offender shall be fined not more than ten thousand dollars and imprisoned at hard labor for not less than five nor more than ten years without the benefit of probation, parole, or suspension of sentence."